UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MARCIA L. CLOUD, *et al.*,§§Plaintiffs,§*versus*§     CIVIL ACTION H-04-4765§WASTE MANAGEMENT, INC., *et al.*,§§Defendants.§ | |

# Opinion on Summary Judgment

1. *Introduction.*

Waste Management, Inc., fired the plaintiffs. The plaintiffs claim that Waste discriminated against them on illegal grounds and retaliated against them for complaining about the situation. Waste dealt with their complaints at that time and has explained here why each was fired for legitimate business reasons. Waste moved for summary judgment for all of the plaintiffs' claims, and it will prevail.

2. *Cloud.*

On June 7, 2002, Waste Management, Inc., hired Marcia Cloud as a contract employee through Ajilon Consulting. Cloud worked as a business analyst on a team in Waste's systems department. Jean Swan and Steve Ennis supervised her team. Dwight Bengtson directed it and supervised Swan and Ennis.

On May 30, 2003, Cloud complained to Swan about racial and sexual comments made by co-workers, Chris Davenport, Jim Godso, and Steve Ennis. Cloud is a black woman. Specifically, Cloud complained that Davenport made racial comments and that Ennis made racial and sexual comments towards her and other co-workers. Waste investigated the claims through its human resources department. In June 2003, Waste fired Davenport, Godso, and Ennis for their misbehavior. Tracy Colson replaced Ennis.

In October 2003, Cloud complained to Ajilon Consulting about sexual and racial comments made by Bob Burgess, another contract employee. Specifically, Cloud complained Burgess commented about his sex life and joked about East Indians and African-Americans. After an investigation, Waste fired Burgess that November for his misbehavior.

On October 24, 2003, Cloud complained to the Equal Employment Opportunity Commission that Waste discriminated against her based on race and sex and retaliated against her. Cloud claimed Colson isolated her, Swan and Bengtson were cold towards her, and Bengtson gave her a poor performance review resulting in only a small raise.

In January 2004, Waste announced to Cloud and the rest of the systems department that all contract employees would be replaced by full-time employees. Waste encouraged the contract employees to apply for the new full-time positions. Cloud did not apply for a full-time position. Waste terminated Cloud's contract on April 30, 2004, after a full time employee was hired to fill her position.

3.  *Dust and Porter*.

In October 1999, Waste hired Fred Dust as a contract employee. In October 1999, Waste hired Kirk Porter as a contract employee. By January 2003, Dust and Porter's contracting company became Business Integrators, Inc. Dust and Porter worked on the same team as Cloud in Waste's systems department programming and consulting.

In June 2003, Waste interviewed Dust and Porter during the investigation of Cloud's complaint on May 30, 2003. Dust and Porter complained in their interviews that Godso preached to them and told them they would go to hell if they did not follow Godso's religion. Porter complained that Godso sent a racially offensive e-mail. He complained that Davenport used racial slurs to describe Cloud. Porter also complained Ennis made racial comments and touched Rani Moorjani on her shoulders. That month, Waste fired Davenport, Godso, and Ennis.

In October 2003, Waste interviewed Dust and Porter during the investigation of Burgess's conduct. In November, Burgess was fired by Waste. On November 6, 2003, both Dust and Porter lodged complaints with the commission claiming Waste discriminated against them and retaliated against them for their participation in the investigations.

In support of his retaliation claim, Dust says that Bengtson, Swan, and Colson avoided him, reduced his assignments, and would not let him work from home.  Porter claims Colson and Bengtson over-scrutinized his work, denied him the best assignment, and would not let him work from home.  Porter also claims Swan refused to talk to him at work.  Both Dust and Porter testified that Colson stated he wanted to get rid of all the people who helped get his friend, Godso, fired.

In January 2004, Dust and Porter were told that Waste intended to stop using contract employees and hire full-time employees. Waste encouraged both to apply for full-time positions, but neither of them applied.  Another contract employee from Integrators did apply for a position and was hired.

On February 22, 2004, Porter complained to Waste about another Waste contract employee from Integrators.  Waste forwarded the complaint to Integrators.  On March 5, 2004, Waste ended the contract with Integrators after Integrators failed to investigate the complaint as required by their contract.  Dust, Porter and 10 other contract employees from Integrators were terminated.

4. *Moorjani.*

 On November 1, 1999, Waste hired Moorjani.  In February 2001 Moorjani was promoted to business analyst on the same team as Cloud.  Swan was Moorjani's direct supervisor. Moorjani is an East-Indian woman.

In June 2003, Waste interviewed Moorjani during the investigation of Cloud's complaint of May 30, 2003.  Moorjani complained she had been racially discriminated against and sexually harassed for the past two and one-half years.  Moorjani claimed Ennis, Godso, and Davenport made racial and sexual comments.  Waste fired Ennis, Godso, and Davenport in June 2003.

In October 2003, Waste interviewed Moorjani during the investigation of Burgess's conduct.  Moorjani complained about Burgess's conduct.  Burgess was fired in November 2003. On October 30, 2003, Moorjani complained to the commission that she was discriminated against and retaliated against for her participation in the investigations.

Moorjani claims here that Waste retaliated against her for her participation in the investigations.  Moorjani complains that she was given a poor performance review on March 11, 2004, because she was rated "met most expectations" rather than her previous reviews stating

"meets expectations." Moorjani complains Swan gave her too much work and then too little and excluded her from meetings.

On September 28, 2004, Moorjani moved programming code into a production environment. By moving the code, Moorjani violated a Waste security policy established to comply with the Sarbanes-Oxley Act of 2002. Moorjani admitted to moving the code and knowing she was not supposed to move it. On October 1, 2004, Waste fired Moorjani. Rene Mizler, the Managing Director of Corporate Programs, made the decision. Moorjani testified her supervisor, Swan, instructed her to move the code.

5.  *Van Eden.*

On September 23, 2002, Waste hired Godiva Anna Van Eden as a contract employee through Btek Group. Van Eden worked as a business analyst on the same team as Cloud in Waste's systems department. Swan gave Van Eden assignments and Bengtson supervised. Van Eden is a Chinese woman and practices Feng Shui.

On May 19, 2003, Van Eden met with Waste employees outside the systems department to discuss a project without first informing Swan. In early June, Swan instructed Van Eden to always inform her of project meetings. On July 30, 2003, Swan met with Van Eden to discuss the problem. Btek then instructed Van Eden to keep Swan in the loop. On August 8, 2003, during a meeting with Mizler, Van Eden was instructed she could not meet with Waste employees about projects without informing Swan.

In June 2003, Waste interviewed Van Eden during the investigation of Cloud's complaint on May 30, 2003. Van Eden complained that Ennis called Chinese people chinks. She complained that Davenport made sexual jokes about co-workers. She also complained that Godso made fun of people who practice Feng Shui.

In September 2003, Van Eden told Swan and Bengtson she had met with Waste's vice president of finance about a project without informing either of them before the meeting. Waste fired Van Eden on September 21, 2003.

6.  *Discrimination.*

Each worker claims that Waste discriminated against them on illegal grounds. To establish a discrimination claim, the workers must show that (1) they are members of a protected

class, (2) they were qualified for the positions held, (3) they were subjected to an adverse employment action, and (4) they were treated differently from others similarly situated. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005). To establish a hostile work environment claim, the workers must show that (1) they are members of a protected class, (2) they were the targets of harassment because of their membership in the protected class; (3) the harassment caused an adverse employment action; and (4) their employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428 (5th Cir. 2005). The court does not address here whether the contract workers are employees of Waste.

The workers do not have valid claims for discrimination. The comments the workers found offensive caused friction in the workplace. They did not cause an adverse employment action. After the workers complained to Waste, it fired the people who made the comments. The workers offer nothing to support that Waste fired them based on their race, gender, religion, or age or allowed the co-workers to harass them.

Regardless of their validity, the workers abandoned their claims of discrimination by failing to respond to Waste's motion for summary judgment against these claims. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. FED. R. CIV. P. 56(e). Waste established evidence to support summary judgement against the discrimination and hostile work environment claims and the plaintiffs failed to respond with specific facts. Summary judgment is proper for the plaintiffs' claims of discrimination and hostile work environment.

7.     *Retaliation.*

The workers claim Waste fired them in retaliation for the complaints. To prevail on a claim of retaliation, they must prove that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, and (3) the employer fired them - at least in material part - because of the protected activity. *See Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005). If they establish the three requirements, Waste may offer legitimate

reasons for the firings to rebut their presumptive claims. *See Chaney v. New Orleans Pub. Facility Management*, 179 F.3d 164, 167 (5th Cir. 1999). If Waste offers a legitimate reason, then the workers must prove Waste actually fired them for engaging in the protected activity rather than for the reason offered. *See id.*

The workers' participation in Waste's investigations of the complaints of unlawful employment practices and their complaints to the Equal Employment Opportunity Commission are protected activities. *See* 42 U.S.C. § 2000e-3(a). Dust did not complain about an unlawful employment practice. He only complained that Godso preached to him at work. Although Dust and the other workers may find Godso's preaching annoying, and Waste may find it disruptive in the workplace, complaining that a co-worker is expressing his religious views is not a protected activity. The workers suffered an adverse employment action when Waste fired them. *See* 42 U.S.C. § 2000e-2(a)(1) The plaintiffs' claims fail in establishing a causal connection between their complaints and the firings and refuting Waste's legitimate business reasons for the firings.

Waste fired Cloud six months after her complaint to the commission. Waste fired Dust and Porter four months after their complaints to the commission. Cloud claims between the time of her complaints and her firing, she was isolated, intimidated, and received a poor performance review. Dust and Porter claim during the same time, their supervisors stopped talking to them and reduced their assignments.

They all point to Dust and Porter's statements that Colson said he was out to get everyone involved in Godso's firing. Colson did not fire them nor did he make the decision to replace all contract employees in the systems department. Assuming all of these claims are true, Cloud, Dust and Porter have not proven a causal connection between their complaints and their firings. There is no evidence the person who fired them did so because of their complaints.

Waste offered a legitimate business reason for firing them. Waste planned to replace the contract employees in the systems department with full-time employees. After a dispute with Dust and Porter's employment agency, Waste fired them and ten other contract employees from that agency. Once a replacement for Cloud's position was found, she was fired.

Waste asked the contract employees to apply for the positions, but neither Cloud, Dust, nor Porter did. Their failure to apply cancels their claims of an adverse employment action. One

contract employee that did apply was hired for a full-time position.  Cloud, Dust, and Porter had the opportunity to continue their employment at Waste, but chose not to.

Waste fired ten other contract employees who were not involved with the complaints as part of its replacement of contract workers.  It implemented a legitimate business plan to reduce the systems department's use of contract employees.  Cloud, Dust, and Porter offer nothing to support Waste fired them in retaliation and then fired the ten other contract employees to cover its retaliation.  They have no evidence that retaliation was the motivation for the firings.

Waste fired Moorjani eleven months after her complaint to the commission.  Moorjani claims between the time of her complaints and her firing, she was isolated, she received a poor performance review, and her supervisor reduced her workload.  Mizler, who did not participate in the investigations, made the decision to fire Moorjani.  Assuming all of her complaints are true, Moorjani has not proven a causal connection between her firing and her complaints.  There is no evidence Mizler fired her because of her complaints.

Waste offered a legitimate business reason for firing Moorjani.  Waste fired Moorjani for violating a security policy.  She was fully aware of the policy.  She argues that she moved files as prohibited by the policy before her complaints and was never disciplined.  She was never previously disciplined because Waste implemented the policy the January after her complaints.  Moorjani claims her supervisor, Swan, told her to move the files which led to her firing.  Even if Swan did tell her to move the files, Moorjani offers no evidence that Swan was trying to get her fired in retaliation for the complaints.  She cannot prove a causal connection or retaliation was the real motivation for her firing.

Waste fired Van Eden two and one half months after her participation in the June investigation.  Van Eden claims between the time of her complaints and her firing, she was micro-managed, she received negative performance evaluations, and the demeanor of her co-workers changed around her.  Assuming all of her claims are true, Van Eden has not proven a causal connection between her firing and her complaint.  There is no evidence the person who fired her did so because of her complaints.

Waste offered a legitimate business reason for firing Van Eden.  Waste warned her multiple times not to bypass her supervisors when scheduling meetings with employees outside the systems department.  After Van Eden scheduled a meeting with a Waste employee outside

the systems department, Waste fired her. Van Eden offers no evidence the real reason Waste fired her was her participation in the investigation. She cannot prove a causal connection or retaliation was the real motivation for her firing.

8.  *Conclusion.*

The plaintiffs complained of discrimination and retaliation. They abandoned their discrimination claims. The evidence of retaliation fails to establish Waste fired the workers for complaining. Waste promptly dealt with their internal complaints and months later fired each plaintiff for legitimate business reasons. Waste is not liable for discrimination or retaliation against the plaintiffs.

Signed March 31, 2006, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge